UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICHAEL DENTON,<br><br>    Plaintiff,<br><br>v.<br><br>KARIE RAINER,<br><br>    Defendants. | Case No. C19-5743 BHS-TLF<br><br>REPORT AND RECOMMENDATION<br><br>Noted for July 23, 2021 |

This matter comes before the Court on plaintiff's motion for preliminary injunction. Dkt. 59. The parties have briefed the issues and the Court has held oral argument. Dkt. 59-66. For the reasons set forth below, the undersigned recommends that the Court grant plaintiff's motion for preliminary injunction under FRCP 65. (Dkt. 59). In the alternative, the Court should advance the trial on the merits and consolidate it with an evidentiary hearing on the plaintiff's motion for preliminary injunction. FRCP 65(a)(2). The Court must preserve the plaintiff's and defendants' right to a jury trial on the damages claims. FRCP 65(a)(2).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging that the defendants have violated his constitutionally protected rights. Dkt. 10. Plaintiff alleges, amongst other claims, that the defendants have violated plaintiff's Eighth Amendment Rights by placing him in solitary confinement. Dkt. 10. Plaintiff has requested a

REPORT AND RECOMMENDATION - 1

permanent injunction as a remedy. Dkt. 10 at 31-34. Plaintiff also seeks damages. Dkt. 10 at 34-35.

Plaintiff alleges that he has been held in solitary confinement since 2016 and remains in solitary confinement. Dkt. 59. During oral argument, defense counsel confirmed that plaintiff has been held in administrative segregation from at least 2017 to present. Dkt. 66. Defendant's briefing confirms that plaintiff has remained in administrative segregation since 2016 due to assaults and serious infractions. Dkt. 62 at 4. It is undisputed that plaintiff has committed infractions and has engaged in disruptive behavior while incarcerated in administrative segregation. Dkt. 59 at 7-8.

In 2017 plaintiff underwent a Clinical and Forensic Psychological Evaluation with Dr. Anthony Eusanio. Clinical and Forensic Psychological Evaluation re: Diminished Capacity (Eusanio Report), Dkt. 60-1 at Ex. A. Dr. Eusanio's report explains that plaintiff has a long history dating back to plaintiff's childhood of mental health challenges and diagnoses necessitating prescription of psychoactive medication. Eusanio Report at 11-15, Dkt. 60-1 at Ex. A. Dr. Eusanio stated that plaintiff's mental health diagnoses include Complex Chronic Posttraumatic Stress Disorder, Borderline Personality Disorder and Antisocial Personality Disorder. Eusanio Report at 25-30, Dkt. 60-1 at Ex. A.

In 2020, while plaintiff was housed at Stafford Creek Correctional Center, Dr. Cryder agreed with Dr. Eusanio's diagnoses of Complex PTSD, antisocial personality disorder and borderline personality disorder. Dr. Cryder's Response to Plaintiff's Grievance, Dkt. 60-1 at Ex. F. Dr. Cryder stated that Dr. Rome, the Chief Psychiatrist for the Department of Corrections, agreed with these diagnoses. *Id.* Dr. Yelverton and Dr. Cryder agreed that plaintiff should also be diagnosed with dissociative amnesia. *Id.*

1    Additionally, Dr. Eusanio stated that plaintiff exhibited symptoms of SHU
2 Syndrome. Eusanio Report at 28, Dkt. 60-1 at Ex. A. Dr. Eusanio explained that the
3 symptoms of SHU Syndrome include: hypersensitivity to external stimuli; perceptual
4 distortions, illusions, hallucinations; panic attacks; difficulties with thinking,
5 concentration, memory, including even acute psychotic confusional states and
6 disorientation. *Id.* at 29. Dr. Eusanio also explained that SHU Syndrome can lead to
7 self-harm and suicidal ideations as well as impulse and behavioral control problems. *Id.*
8    Dr. Eusanio further opined that plaintiff experienced nearly all of these
9 symptoms. *Id.* With regard to SHU Syndrome, Dr. Cryder stated: "As SHU syndrome is
10 not a recognized diagnosis in the DSM-V … I cannot make this diagnosis, however Dr.
11 Eusanio does make a compelling argument." Dr. Cryder's Response to Plaintiff's
12 Grievance, Dkt. 60-1 at Ex. F. During oral argument defense counsel confirmed that
13 plaintiff had been diagnosed with SHU Syndrome. Dkt. 66.
14    One of the symptoms that Dr. Eusanio reports is associated with SHU Syndrome
15 is suicidal ideations. Eusanio Report at 29, Dkt. 60-1 at Ex. A. The report notes
16 plaintiff's history of suicide attempts and self-harm, including, cutting and head banging.
17 *Id.* at 20. Dr. Eusanio also explains that while plaintiff states that these ideations are
18 manipulative and correctional staff believe they are manipulative, plaintiff uses self-
19 deceptive enhancements. *Id.* Accordingly, Dr. Eusanio opines that while some claims of
20 suicidal ideation may be manipulative, others are sincere suicidal ideations. *Id.*
21    Dr. Eusanio endorsed that due to SHU Syndrome, plaintiff experiences audio
22 perceptual disturbances and transient psychotic states, and will often have no memory
23 of his actions during this time. Eusanio Report at 17-19, 30, Dkt. 60-1 at Ex. A.
24
25

REPORT AND RECOMMENDATION - 3

Accordingly, Dr. Eusanio opines that due to these conditions, plaintiff has difficulties regulating his emotions and behaviors. *Id.*

Finally, during oral argument, plaintiff's counsel requested an evidentiary hearing on the merits of the pending motion for preliminary injunction. Dkt. 66.

## DISCUSSION

Injunctions are "to be used sparingly, and only in a clear and plain case." *Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (quoting *Irwin v. Dixon*, 50 U.S. 10, 33 (1850)); *see also Sampson v. Murray*, 415 U.S. 61, 83 (1974). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Instead, injunctive relief "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.

To obtain a preliminary injunction, a party must demonstrate that: (1) he is likely to succeed on the merits; (2) he will likely suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. The moving party must make a showing on all four factors in order to obtain a preliminary injunction. *A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018) (citing to *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

Alternatively, in the Ninth Circuit, "a plaintiff may also obtain a preliminary injunction by showing 'serious questions go[] to the merits' of its claims and a balance of the hardships that tip "sharply" towards the plaintiff, so long as it makes a showing on the other two factors." *A Woman's Friend*, 901 F.3d at 1167 (quoting *Alliance*, 632 F.3d at 1135). However, a plaintiff may not obtain an injunction merely because an

irreparable injury is possible, the plaintiff must show that the irreparable injury is likely absent preliminary relief. *Am. Trucking Association, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

(1) Likelihood of Success

To warrant preliminary injunction, the party seeking injunctive relief must demonstrate that they are likely to succeed on the merits of their action. *Winter*, 555 U.S. at 20. Under the Ninth Circuit sliding scale approach, the moving party must demonstrate, at minimum, "a fair chance of success on the merits, or questions serious enough to require litigation." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1106 (9th Cir. 2012) (quoting *Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir. 2009)).

a. Eighth Amendment Claims

While Courts must respect a State's interest in the administration of correctional facilities, "as well as the need for deference to experienced and expert prison administrators faced with the difficult and dangerous task of housing large numbers of convicted criminals … Courts nevertheless must not shrink from their obligation to enforce the constitutional rights of all persons, including prisoners." *Brown v. Plata*, 563 U.S. 493, 511 (2011) (internal quotations omitted). "Courts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Id*.

While prisoners may be punished as a consequence of their own actions, the Constitution demands recognition that prisoners retain the essence of human dignity inherent in all persons. *Brown*, 563 U.S. at 510. Respect for that dignity is embodied by the Eight Amendment's prohibition against cruel and usual punishment. *Id*. ("The basic

concept underlying the Eighth Amendment is nothing less than the dignity of man.") (quoting *Atkins v. Virginia*, 536 U.S. 304, 311 (2002)). A prison's failure to provide adequate medical care and conditions, "is incompatible with the concept of human dignity and has no place in civilized society" and must be corrected. *Id*. ("If government fails to fulfill this obligation, the courts have a responsibility to remedy the resulting Eighth Amendment violation.").

A prisoner with a serious mental illness can maintain an Eighth Amendment claim if the prisoner establishes that they face a substantial risk of serious harm and that the serious risk is met with deliberate indifference to their condition. *Disability Rights Mont., Inc. v. Batista*, 930 F.3d 1090, 1097, 1101 (9th Cir. 2019) (citing *Brown v. Plata*, 563 U.S. 493 (2011); *Farmer v. Brennan*, 511 U.S. 825 (1994)). "Deliberate indifference is a state of mind equivalent to recklessly disregarding a known and substantial risk." *Valentine v. Collier*, __ U.S. __, 141 S. Ct. 57, 60 (2020) (Sotomayor, J., dissenting) (internal quotations omitted). Prison officials cannot ignore conditions of confinement that are very likely to cause serious illness and needless suffering. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 33 (1993). The risk of harm must be an objectively intolerable risk of harm. *Glossip v. Gross*, 576 U.S. 863, 877 (2015).

The record shows that plaintiff has been in administrative segregation since 2016 and remains in administrative segregation. Dr. Eusanio's 2017 Report indicates that plaintiff was previously incarcerated and held in administrative segregation and solitary confinement. Dr. Eusanio also found that plaintiff suffers from a number of mental health conditions, including SHU Syndrome, which was caused by plaintiff being continuously housed in administrative segregation.

Defendants do not challenge that plaintiff suffers from SHU Syndrome. Further, doctors working for the Department of Corrections agreed that plaintiff suffers from a number of mental health conditions and acknowledged that plaintiff's medical records supported Dr. Eusanio's diagnosis of SHU Syndrome.

Dr. Eusanio explained that due to plaintiff's SHU Syndrome, caused by a history of administrative segregation, plaintiff experiences audio perceptual disturbances, transient psychotic states and will often have no memory of what occurred during these times. Additionally, Dr. Eusanio opined that these conditions cause plaintiff to have difficulty regulating his emotions and behaviors. Finally, plaintiff has a history of suicide attempts and serious self-harm, caused, in part, by his mental health diagnoses.

Based on the above evidence, it appears that plaintiff is suffering from a number of mental health conditions that are causing plaintiff significant psychological injury. Additionally, the evidence indicates that plaintiff's conditions are caused and exacerbated by being held in administrative segregation. Plaintiff has been continuously housed in administrative segregation for four years since Dr. Eusanio's Report and continues to suffer from the same conditions. Accordingly, the record indicates that plaintiff is currently suffering substantial harm from being housed in administrative segregation and faces a substantial risk of further harm if he is kept in administrative segregation.

Defendants have been aware of plaintiff's mental health challenges and diagnoses since at least 2017. Defendants have kept plaintiff in administrative segregation despite knowing that these conditions caused and exacerbate plaintiff's current diagnoses. Additionally, plaintiff has presented evidence, that a judge (in the

REPORT AND RECOMMENDATION - 7

1  case for equitable relief) or jury (in the case for damages) could reasonably find,
2  demonstrates that plaintiff met defendants' requirements to earn his way out of
3  administrative segregation and defendants refused to move plaintiff from administrative
4  segregation. Declaration of Michael Denton, Dkt. 60; Deposition of Michael Denton, Dkt.
5  61-1 at Ex. A; Department of Correction Emails, Dkt. 61-1 at Ex. D.

Defendants argue that plaintiff cannot show a likelihood of success because defendants provided plaintiff medical treatment and were therefore not deliberately indifferent to plaintiff's medical needs. Dkt. 62. While there is some evidence that defendants provided plaintiff medical care, defendants kept plaintiff in a condition that they knew caused plaintiff's diagnoses and would subject plaintiff to worsening symptoms.

The fact that defendants provided some level of medical care while knowingly keeping plaintiff in conditions that exposed him to future substantial harm, does not preclude a finding of deliberate indifference. *Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("We have great difficulty agreeing that prison authorities may not be deliberate indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week, month or year.").

Based on the foregoing discussion, plaintiff has presented sufficient evidence to demonstrate, at a minimum, a fair chance of success and questions serious enough to require litigation on his Eighth Amendment claims.

b.  Collateral Estoppel

Defendants next argue that plaintiff's Eighth Amendment claims are barred by the doctrine of collateral estoppel. Dkt. 62. Accordingly, defendants argue that the Court should deny plaintiff's motion because plaintiff cannot establish a likelihood of success on the merits. *Id*. For the reasons set forth below, plaintiff's claims are not barred by the doctrine of collateral estoppel.

The doctrine of collateral estoppel is intended to prevent parties from relitigating issues actually adjudicated in a previous litigation. *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019). In order for an issue to be bared by collateral estoppel, the following conditions must be met: (1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits. *Id*. Unlike the doctrine of res judicata, collateral estoppel requires that the issue was actually and necessarily determined by a court of competent jurisdiction to be conclusive in a subsequent action. *Id*.

Defendants argue that plaintiff's Eighth Amendment claims are barred by the Court's decision in *Denton v. Thrasher*, No. 18-5017-BHS-DWC. Defendants cite to the Court's Report and Recommendation (Dkt. 137) and the Order Adopting Report and Recommendation (Dkt. 142) in the previous action as precluding plaintiff's current litigation. Dkt. 62. The Court should take judicial notice of the record in *Denton v. Thrasher*, No. 18-5017-BHS-DWC, pursuant to Federal Rule of Evidence 201.[1]

---

[1] Pursuant to Federal Rule of Evidence 201, the Court may properly take judicial notice of the pleadings, orders and reports and recommendations filed in a previous litigation between the same parties. *Shuttlesworth v. Birmingham*, 394 U.S. 147, 157 (1969).

REPORT AND RECOMMENDATION - 9

The Honorable David W. Christel's Report and Recommendation in *Denton v. Thrasher* addresses plaintiff's claims regarding alleged occurrences between 2015 and 2017. No. 18-5017-BHS-DWC, Dkt. 137 at 10-11. Plaintiff's motion for preliminary injunction relates to plaintiff's current conditions of confinement and covers a time period after the alleged occurrences at issue in *Denton v. Thrasher*. During oral argument, defendants conceded that the alleged occurrences at issue in this litigation occurred in a different time period than the claims in *Denton v. Thrasher*. Dkt. 66. Accordingly, because the issues before the Court in this litigation are not identical to the issues in *Denton v. Thrasher* and were not adjudicated in the previous litigation, the doctrine of collateral estoppel does not preclude plaintiff's current claims.

Based on the foregoing reasons, Court should find that plaintiff has sufficiently met the first prong of likelihood of success on the merits.

(2) <u>Irreparable Harm</u>

"It is well established that the deprivation of constitutional right's 'unquestionably constitutes irreparable injury.'" *Rodrigues v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) (quoting *Melendres v. Arpaio*, 695 F.3d 990. 1002 (9th Cir. 2012)). When a party meets the first prong, alleging a violation of their constitutionally protected rights, they are likely to face irreparable harm in the absence of a preliminary injunction. *Doe v. Kelly*, 878 F.3d 710, 718 (9th Cir. 2017). Additionally, irreparable injury exists where the plaintiff is faced with immediate emotional and psychological injury because damages cannot adequately compensate this damage. *Edmo v. Corizon, Inc.*, 935 F.3d 757, 798 (9th Cir. 2019).

As has been discussed above, plaintiff has demonstrated at minimum a fair chance of success on the merits and questions serious enough to require litigation on his Eighth Amendment claims. This potential violation of constitutional rights is sufficient on its own to constitute irreparable harm. *Rodrigues*, 715 F.3d at 1144. Further, the Court should find that the deterioration of plaintiff's psychological injury, caused by further administrative segregation, independently establishes a likelihood of irreparable harm absent injunctive relief.

(3) <u>Balance of Equities and Public Interest</u>

When the government is a party, the last two prongs of the injunction analysis merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). As to public interest, "it is always in the public interest to prevent the violations of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (internal quotations omitted). Further, when an injunction merely requires the government to meet constitutional standards, the balance of equities and public interest favor providing injunctive relief, in part because the government suffer no harm from the injunction. *Doe*, 878 F.3d at 718; *Hernandez v. Sessions*, 872 F.3d 976, 995-96 (9th Cir. 2017) ("Faced with such a conflict between financial concerns and preventable human suffering, we have little difficulty concluding that the balance of hardships tips decidedly in plaintiff's favor.") (internal citations omitted).

While the Court acknowledges the difficulties inherent in managing inmates in a custodial facility, especially inmates with a history of disruptive behavior, logistical problems alone cannot justify the deprivation of an inmate's basic human needs. *Shorter v. Baca*, 895 F.3d 1176, 1186 (9th Cir. 2018). The risk of substantial and

irreparable harm to plaintiff's health absent injunctive relief weighs sharply in favor of injunctive relief. The undersigned recommends that the Court find that the balance of equities and public interest supports granting injunctive relief in this action.

## CONCLUSION

For the reasons set forth herein, the undersigned recommends that the Court GRANT plaintiff's motion for preliminary injunction under FRCP 65. (Dkt. 59). In the alternative, the Court should advance the trial on the merits and consolidate it with an evidentiary hearing on the plaintiff's motion for preliminary injunction. FRCP 65(a)(2). The Court must preserve the plaintiff's and defendants' right to a jury trial on the damages claims. FRCP 65(a)(2).

Pursuant to the Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(1), the Court's prospective relief must be narrowly drawn, extend no further than necessary to correct the violation and must be the least intrusive means necessary to correct the violation. *Gomez v. Vernon*, 255 F.3d 1118, 1129 (9th Cir. 2001); see also FRCP 65(d) ("Every order granting an injunction must. . . describe in reasonable detail . . . the act or acts restrained or required."). Before granting relief, the Court must also consider the adverse impact on public safety or the operation of a criminal justice system the relief could cause. *Gomez*, 255 F.3d at 1129.

To order injunctive relief that promptly takes steps to correct the potential continuing harm and avoid a continuing constitutional violation in this case, in the least intrusive manner, the Court should direct defendants to prepare a proposed plan – within seven days of the Court's Order – to correct the alleged violation. Defendant's proposed plan must outline the following:

- A reasonable estimated time for plaintiff to be removed from solitary confinement;
- Where plaintiff will be housed outside of solitary confinement or the highest level of administrative segregation and describing the treatment that will be provided to plaintiff in that setting;
- The criteria and procedure that will be implemented before making any decision to move plaintiff back to solitary confinement or administrative segregation.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b)(2). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). If objections are filed, the parties shall have **fourteen (14) days** from the service of the objections to file a response. FRCP 72(b)(2).

Accommodating this time limitation, this matter shall be set for consideration on July 23, 2021, as noted in the caption.

Dated this 7th day of July, 2021.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13