UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL DENTON,

        Plaintiff,

  v.

KARIE RAINER, et al.,

        Defendants.

CASE NO. C19-5743 BHS

ORDER

This matter comes before the Court on Plaintiff Michael Denton's Third Motion for Preliminary Injunction, Dkt. 163.

Denton is a prisoner currently housed at the Washington State Penitentiary ("WSP") in Walla Walla, Washington. *Id.* at 3. He sued numerous Washington Department of Corrections staff members in 2019 alleging violations of his civil rights related to their prolonged holding of him in solitary confinement. *See generally* Dkt. 1-1 (original complaint); Dkt. 155 (operative complaint). The factual and procedural history of this case has been detailed several times by the parties and the Court. *See, e.g.*, Dkt. 78 at 2–3. The Court will repeat only the details relevant to Denton's currently pending preliminary injunction motion.

ORDER - 1

1    Denton moved for a preliminary injunction in November 2022, requesting the
2 Court order Defendants to immediately release him from solitary confinement "or
3 otherwise" to prevent Defendants from housing him or any other inmate in solitary
4 confinement for more than fourteen consecutive days. Dkt. 163 at 25. He also asked the
5 Court to order Defendants to "immediately provide Denton with necessary mental and
6 behavioral health treatment, including for conditions he has developed while confined in
7 isolation." *Id.*

8    In February 2023, the Court held a two-day hearing on the motion during which
9 the parties presented eight witnesses, including opposing expert witnesses and Denton
10 himself. *See* Dkts. 204, 205. During the hearing, witness Kevin Bowen, DOC's Mission
11 Housing Administrator, explained that DOC was working on a plan to transfer Denton to
12 the BAR Units[1] at WSP. *See* Dkt. 217, Day 1 Transcript at 126:17–19 ("I would say yes,
13 that is what we are working on, once again, is transferring [Denton] to the BAR.").

14    At the end of the hearing, the Court reserved ruling on Denton's motion primarily
15 because DOC was in the process of developing a plan to transfer Denton out of solitary
16 confinement. Dkt. 218, Day 2 Transcript at 190:15–22. The Court explained its view that
17 it was important that DOC had an opportunity to develop a "well-thought-out plan that is
18 more likely to succeed in breaking the cycle Mr. Denton has been involved in." *Id.* at
19 190:17–20. The Court therefore ordered the parties to provide a joint status report
20 detailing DOC's plan to transfer Denton out of solitary confinement. Dkt. 206. The Court

---

[1] WSP's "BAR Units" refer to its Baker, Adams, and Rainier Units. Those units contain a mix of maximum and close custody housing but not solitary confinement.

also requested that the parties procure an "updated mental health examination, by an independent examiner, assessing Denton's mental health conditions, the effects of solitary confinement on his mental health, and his potential dangerousness when outside of solitary confinement." *Id.* at 1–2.

The parties filed that joint status report on March 3, 2023. Dkt. 220. The parties explained that DOC approved a plan to transition Denton to Baker Unit the week of March 6, 2023. *Id.* at 2. In that unit, Denton would be housed in a single-occupancy cell and be permitted access to "regularly scheduled activities," including recreation time and access to the dayroom. *Id.* He would also eventually have access to employment and recreational opportunities and mental health groups. *Id.* The plan also included significant mental health services: Denton would have daily contact with a counselor or Correctional Unit Supervisor for the first two weeks and he would be assigned a primary therapist to provide him with necessary care. *Id.*

The parties also agreed on an independent medical examiner, Dr. Nathan Henry, to conduct Denton's updated mental health examination. Dkt. 229. Dr. Henry conducted his examination of Denton on April 7, 2023, and his report was submitted to the Court on May 22, 2023. Dkt. 242.

While limited, the updates the Court has received regarding Denton's behavior since his transfer to Baker Unit have been positive. It is the Court's understanding that Denton has been able to maintain employment, has remained infraction free, and has been better able to reasonably control his outward emotions. His one reported behavioral

issue was quickly resolved and his Correctional Mental Health Unit Supervisor, Scott Buttice, reported that he was able to "utilize[] some of his coping skills." Dkt. 237 at 2.

The Court recently set a hearing for June 15, 2023. Dkt. 239. It intended that hearing to provide an opportunity for it to rule on the pending motions,[2] to receive any updates on Denton's status, and to discuss Dr. Henry's recently completed independent medical examination. It also intended to explain to the parties the issues it sees as remaining for trial given the significant factual developments over the last four months.

In anticipation of that hearing, Defendants expressed concern over the "unusual" way the Court has proceeded thus far on Denton's motion, asserting that the Court "essentially granted [Denton] relief without ruling on the motion" and that it has been "issuing other rulings that [are] not reflected in any written order." Dkt. 237 at 5. Defendants also argue that Denton's preliminary injunction motion is now moot given his transfer out of solitary confinement and into Baker Unit. *Id.* at 4. Denton argues that the motion is not moot because he could be transferred back into solitary confinement at any time. *Id.* at 3. The parties both request an opportunity to fully brief the mootness issue. *Id.* at 3, 5.

The Court concludes that further briefing on this issue is unnecessary and agrees with Defendants that the motion is moot. Denton's only requested relief has been facilitated by the DOC: it released Denton from solitary confinement and it has been

---

[2] Denton has a separate pending motion to exclude Defendants' expert witness, Dr. Ryan Quirk, from testifying at trial. Dkt. 202. That motion will be discussed at the upcoming hearing.

ORDER - 4

providing him with mental and behavioral health treatment. *See* Dkt. 163 at 25. The Court cannot, and would not, grant Denton any further relief on his motion.

Perhaps Denton's intent was to argue that the issue cannot be deemed moot because it is capable of repetition. This is, of course, a valid exception to mootness. *See, e.g.*, *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018) (holding a dispute falls under the capable of repetition exception to mootness if "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.") (internal quotation omitted)). That exception is inapplicable here, however. Denton requested his immediate release from solitary confinement, not his permanent release or any other specific limitations on how DOC may use solitary confinement to manage Denton and other inmates. *See* Dkt. 163 at 25.

Denton's third motion for preliminary injunction, Dkt. 163, is therefore DENIED as moot.

There is a second issue which has been raised several times throughout the pendency of this action that needs to be addressed. Denton has argued that DOC's policy of conducting a formal review of solitary confinement inmates' status every six months[3] is unconstitutional. Defendants argue that this issue is not properly before the Court.

---

[3] Defendants take issue with Denton's description of the review process, explaining that there is a formal review every 180 days with the opportunity for informal reviews in between those formal reviews. Dkt. 237 at 4. It is unclear whether Defendants take issue with him framing a 180-day period as a six-month period, but there is no functional difference between the two. Insofar as there are opportunities for informal reviews in between the formal review process, Defendants have yet to provide sufficient information about what that means,

1    The Court agrees with Defendants that the six-month review is not raised in
2 Denton's motion for preliminary injunction. Denton does raise the frequency and
3 adequacy of review in his complaint, however. *See* Dkt. 155 at 13. As part of his
4 requested relief, Denton seeks "meaningful monthly review of the need for solitary
5 confinement, to include input from his current treating mental health professionals." *Id.*
6 He also alleges that his lack of opportunity for meaningful review of his confinement
7 status violates his Fourteenth Amendment Due Process rights. *Id.* ¶¶ 41, 43.

8    The issue is not *currently* before the Court on any motion. Nevertheless, the Court
9 sees the policy as concerning, especially given the factual developments of this case.
10 Denton's case demonstrates that more efforts and resources applied to rehabilitating
11 solitary confinement residents will likely result in lower census in solitary units. *See*
12 *generally* Dkt. 242 (Dr. Henry's report).

13    Dr. Henry's report informs us that, while maintaining a solitary housing unit may
14 be necessary to protect staff and inmates, there needs to be more intense attention given
15 to evaluation which can lead to opportunities for more efforts at rehabilitating Denton,
16 equipping him with self-management and coping skills. *See, e.g., id.* at 12 ("It has long-
17 since been clear that the typical means of behavioral control being utilized in his
18 correctional environment have not been working for Mr. Denton."). Prolonged
19 confinement in solitary has no doubt worsened Denton's mental health and has resulted

---

21 practically, for inmates like Denton who have been held in solitary confinement for prolonged periods of time; in Denton's case, essentially five years. The Court agrees, however, that neither
22 side has yet been afforded much of an opportunity to fully argue this issue.

ORDER - 6

in exacerbating "emotional and behavioral patterns observed to be characteristics of borderline personality disorder," which Dr. Henry concludes "are a manifestation of the trauma associated with his prolonged confinement in isolation from other human contact/connection."[4] *Id.* at 13.

If evaluations are performed more frequently than every six months, prospects of successful rehabilitation would increase, maybe significantly. Dr. Henry's report suggests that not undertaking more concerted efforts for review only leads to perennial segregation of prisoners. All of this leads the Court to conclude that had Denton requested a preliminary injunction enjoining DOC's current practice of a six-month formal review, he likely would have prevailed.[5]

Finally, the Court would like to briefly address Defendants' allegation regarding its "unusual" handling of this case. The Court acknowledges that by deferring ruling on Denton's preliminary injunction at February's evidentiary hearing it may have caused some confusion. Nevertheless, the Court viewed ruling on the issue at that time to be premature. Defendants chose to review Denton's confinement status around the same

---

[4] Notably, one area where the parties' expert witnesses have disagreed in this case is regarding Denton's potential diagnosis of borderline personality disorder. Dr. Kupers testified Denton likely has the disorder, while Dr. Quirk disagreed, although he acknowledged Denton exhibited some of the symptoms. Dkt. 218 at 34–35, 149–50. Dr. Henry's analysis seems to help resolve this dispute as he opines that Denton does, in fact, have the *symptoms* of borderline personality disorder. Dr. Henry agrees that Denton exhibits these symptoms, but they are caused, not by him having the actual disorder, but by his prolonged isolation. Dkt. 242 at 13.

[5] If the Court were to grant relief on this issue at the preliminary injunction stage, it would order only that Defendants *review* their policy; it would not order a specific policy. Thus, had Denton raised this issue in his preliminary injunction, it would likely also have been moot because Defendants indicate that DOC is currently reviewing the policy.

time as the hearing. The Court recognized that, if Defendants were to successfully devise a plan to move Denton out of solitary, his motion would likely be moot. The Court saw it proper, however, to order an updated independent mental evaluation of Denton given the parties' experts disparate views on his mental state and the cause of his behavioral issues in solitary. The purpose of the independent examination was to assist the Court in ruling on the pending motions to whatever extent necessary.

In other words, the Court's intention was not to avoid the issues before it or to follow an improper procedure, but rather to allow the parties time to work through quickly evolving factual developments without impeding DOC's internal processes.

The Court will still hold a hearing on June 15, 2023. At that hearing, the parties should be prepared to discuss Denton's Motion to Exclude, Dkt. 202, the pretrial schedule and trial date, the issues that remain for trial, and Denton's current status. Dr. Henry need not appear at the hearing and, as previously agreed, Denton may appear via Zoom.

Therefore, it is hereby **ORDERED** that Plaintiff Michael Denton's Third Motion for Preliminary Injunction, Dkt. 163, is **DENIED as moot**.

Dated this 25th day of May, 2023.

BENJAMIN H. SETTLE
United States District Judge